**FILED**

04/21/2022

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
August 24, 2021 Session

## STATE OF TENNESSEE v. SEAN MATTHEW HOUSER

**Appeal from the Circuit Court for Grainger County**
No. 6407      O. Duane Slone, Judge

_____

### No. E2020-01389-CCA-R3-CD

_____

The Appellant, Sean Matthew Houser, pled guilty in the Grainger County Circuit Court to driving under the influence (DUI) per se, a Class A misdemeanor. As a condition of his plea, he reserved two certified questions of law regarding the admissibility of his warrantless blood alcohol test. Based upon the oral arguments, the record, and the parties' briefs, we conclude that the certified questions do not comply with Tennessee Rule of Criminal Procedure 37(b)(2)(A) because they are too broad. Accordingly, we dismiss the appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JILL BARTEE AYERS, J., joined. ROBERT H. MONTGOMERY, JR., J., filed a separate concurring opinion.

Bryan E. Delius (on appeal and at trial) and Bryce W. McKenzie (on appeal), Sevierville, Tennessee, for the appellant, Sean Matthew Houser.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Jimmy B. Dunn, District Attorney General; and George Ioannides, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

On August 10, 2019, the Appellant was charged pursuant to an arrest warrant filed in general sessions court with DUI and possession of a handgun while under the influence, Class A misdemeanors. On November 21, 2019, the general sessions count found him

guilty of the offenses. The Appellant appealed his convictions to the circuit court for a trial de novo and filed a motion to suppress the results of his blood alcohol test, which had been obtained pursuant to a warrantless blood draw.

At the suppression hearing, Dylan Reed, an agent with the Tennessee Bureau of Investigation (TBI), testified for the State that on August 10, 2019, he was a trooper with the Tennessee Highway Patrol. About 2:00 a.m., Trooper Reed was "doing paperwork" when he heard a loud "pop." He looked to the roadway and saw "a car that [had] just hit its brakes and two hub caps were rolling." Trooper Reed drove to the car, which had stopped on the side of the road, and encountered the Appellant. The Appellant's right rear tire was completely flat, and his right front tire "was bent but wasn't flat." The Appellant told Trooper Reed said that he had hit the curb because he was "looking at the school."

Trooper Reed testified that the weather conditions were clear and dry and that the roadway was a straight, two-lane road. Another officer arrived at the scene, and both of the officers agreed that they smelled "the odor of intoxicating beverage." Trooper Reed asked the Appellant to perform the following field sobriety tests: the horizontal gaze nystagmus test, the walk-and-turn test, the one-leg stand test, the Romberg test, and the finger-to-nose test. Trooper Reed said that the Appellant showed multiple "clues" of impairment on all of the tests and and that he and the other officer decided the Appellant had been driving under the influence. Trooper Reed arrested the Appellant, advised him of his Miranda rights, and read an implied consent form to him. Trooper Reed said that the Appellant waived his rights and "did consent." Trooper Reed identified the Appellant's signed "Tennessee Blood and/or Breath Consent Advisement" form and the trooper's "Alcohol/Toxicology Request" form, and the State introduced both forms into evidence.

Trooper Reed testified that he searched the Appellant's car. He found a Cannonball Blast alcoholic beverage with a broken seal in a cooler on the passenger-side floorboard and found a handgun in the glovebox. An emergency medical technician arrived at 2:49 a.m. and collected two samples of the Appellant's blood in the back of an ambulance. Trooper Reed said that he did not recall the Appellant saying anything about a needle during the blood draw and that the Appellant was cooperative. The Appellant continued to comply with the trooper's instructions and never withdrew his consent. Trooper Reed explained that the Appellant appeared to know "what was going on," was not "incoherent," "understood all the questions" Trooper Reed asked, and "spoke fluently." Trooper Reed said he had "no doubt" that the Appellant consented to the blood draw.

Trooper Reed testified that an in-car video camera recorded his interactions with the Appellant. The State played a portion of the recording for the trial court and admitted the recording into evidence. The recording confirmed that Trooper Reed had the Appellant perform several field sobriety tests. After the tests, Trooper Reed arrested him and read Miranda warnings and an implied consent form to him. The Appellant waived his rights

and consented to a breath or blood test. The Appellant told Trooper Reed that he had chewing tobacco in his mouth, so Trooper Reed advised him that a blood test would be necessary due to the tobacco. The Appellant asked if a needle would be used, and Trooper Reed said that a needle would have to be used to collect the blood sample. The Appellant said he did not like needles but did not withdraw his consent.

On cross-examination, Trooper Reed acknowledged that in 2017, the Department of Safety updated its implied consent form. Defense counsel showed a copy of the updated form to the trooper, and he said he did not think he had ever seen the form previously. Trooper Reed acknowledged that the updated form advised defendants that obtaining a blood sample "may involving inserting a needle beneath my skin and into my veins." He also acknowledged that he did not advise the Appellant about the use of a needle when he obtained the Appellant's consent for the blood draw.

Trooper Reed testified that when he first encountered the Appellant, the Appellant was removing items from the trunk of his car and was beginning to change the flat tire. Trooper Reed acknowledged that the Appellant "had all the fine motor skills that he needed to do that" and that the Appellant "wasn't fumbling around at all." The Appellant presented his driver's license and concealed carry permit to the trooper and did not have any trouble doing so. Trooper Reed said that the Appellant initially consented to a breath test. However, Trooper Reed then "advised him that I wanted blood due to the tobacco in his mouth." Defense counsel asked, "But you never said, Do you consent to blood?" Trooper Reed answered, "Never said those exact words." Trooper Reed acknowledged that the Appellant signed the implied consent form about thirty minutes after the blood draw. When Trooper Reed asked the Appellant for consent to search his vehicle, the Appellant responded that he would "rather not."

At the conclusion of the hearing, the trial court noted that on the night of the stop, the Appellant was "very coherent," was "able to communicate well with the officer," had very good "dexterity," followed directions well, and understood what the officer said to him. The trial court further noted that the Appellant "even refused to give consent to search his vehicle when asked to by the officer." The trial court found that while Trooper Reed initially informed the Appellant that the Appellant would be taking a breath test, the officer "clearly advised this defendant that it would be a blood test because of the tobacco." The trial court found that the Appellant knowingly and voluntarily consented to the blood draw and denied his motion to suppress.

Subsequently, the Appellant pled guilty to DUI per se and received a sentence of eleven months, twenty-nine days to be served as forty-eight hours in jail followed by supervised probation. Pursuant to the plea agreement, the State dismissed the charge of possession of a handgun while under the influence, and the Appellant reserved two certified questions of law:

(1)   Whether the trial court erred in denying the [D]efendant's motion to suppress the result of blood testing of a blood sample obtained from the [D]efendant without a warrant in violation of the [D]efendant's rights under the Fourth Amendment of the United States Constitution and Article I, Section 7 of the Tennessee Constitution, when no exception to the warrant requirement existed.

(2)   Whether the trial court erred in finding that the [D]efendant knowingly and voluntarily consented to a blood draw.

## II.  Analysis

The Appellant contends that the trial court erred by denying his motion to suppress because the warrantless blood draw violated his rights under the Fourth Amendment to the Unites States Constitution and article I, section 7 of the Tennessee Constitution.  He asserts that no exception to the warrant requirement existed for obtaining his blood sample and that the trial court erred by finding that he knowingly and voluntarily consented to the blood draw.  The State responds that the court did not err because the Appellant gave voluntary consent.   We conclude that that we do not have jurisdiction to address the merits of the Appellant's claims because his certified questions are overly broad.

Tennessee Rule of Criminal Procedure 37(b)(2)(A) provides that an appellant may appeal from any judgment of conviction occurring as a result of a guilty plea if the following requirements are met:

> (i) the judgment of conviction or order reserving the certified question that is filed before the notice of appeal is filed contains a statement of the certified question of law that the defendant reserved for appellate review;

> (ii) the question as stated in the judgment or order reserving the certified question identifies clearly the scope and limits of the legal issue reserved;

> (iii) the judgment or order reserving the certified question reflects that the certified question was expressly reserved with the consent of the state and the trial court; and

> (iv) the judgment or order reserving the certified question reflects that the defendant, the state, and the trial court are of the opinion that the certified question is dispositive of the case[.]

In State v. Preston, 759 S.W.2d 647, 650 (Tenn. 1988), our supreme court explicitly provided prerequisites to appellate consideration of a certified question of law under Rule 37(b)(2). The court stated:

> Regardless of what has appeared in prior petitions, orders, colloquy in open court or otherwise, the final order or judgment from which the time begins to run to pursue a T.R.A.P. 3 appeal must contain a statement of the dispositive certified question of law reserved by defendant for appellate review and the question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved.

Moreover, the failure to reserve a certified question of law properly pursuant to the requirements in Preston will result in this court's dismissal of the appeal. State v. Robert Glenn Hasaflook, No. M2012-02360-CCA-R3-CD, 2013 WL 4859577, at *3 (Tenn. Crim. App. at Nashville, Sept. 12, 2013) (citing State v. Troy Lynn Woodlee, No. M2008-01100-CCA-R3-CD, 2010 WL 27883, at *2 (Tenn. Crim. App. at Nashville, Jan. 6, 2010)).

We do not think that the Appellant's certified qestions clearly identify the "scope and limits of the legal issue." State v. Long, 159 S.W.3d 885, 887 (Tenn. Crim. App. 2004). At the suppression hearing, defense counsel argued that the Appellant initially consented to a breath test and that he never consented to the blood test or declined consent for the blood test when he said he did not like needles. However, the Appellant's certified questions of law say nothing about how his blood was obtained without his consent or how the trial court erred by finding that his consent was involuntary. As this court has explained,

> certified questions of law which fail to narrowly construe the issues and identify the trial court's holding do not provide an adequate basis for our review. See State v. Treat, No. E2010-02330-CCA-R3-CD, 2011 WL 5630804, at *5 (Tenn. Crim. App. 2011) (holding that a certified question that did not "articulate the reasons previously relied upon by the Defendant in support of his arguments [and did] not describe the trial court's holdings on the constitutional issues presented" was overly broad); State v. Hawks, No. W2008-02657-CCA-R3-CD, 2010 WL 597066, at *5 (Tenn. Crim. App. 2010) (holding that the certified question was overly broad because it did not specify what police action rendered the search and arrest unconstitutional, and did not adequately set forth the legal basis for the claim); see also State v. Horton, No. W2008-01170-CCA-R3-CD, 2009 WL 2486173, at *4 (Tenn. Crim. App. 2009) (holding that the certified question was framed too broadly such that the appeal court would have to conduct a complete overview of search and seizure law to answer it, which the court declined to do).

Robert Glenn Hasaflook, No. M2012-02360-CCA-R3-CD, 2013 WL 4859577, at \*4. Therefore, we conclude that the Appellant's certified questions of law are overbroad because they fail to identify clearly the issue preserved for appeal. Thus, we lack jurisdiction to address the merits of the Appellant's claims.

### III. Conclusion

Based upon the oral arguments, the record, and the parties' briefs, we conclude the Appellant's certified questions are overly broad and dismiss the appeal.

_____
NORMA MCGEE OGLE, JUDGE